**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   KELLY MEDORA,                               No. C 06-0558 EDL
11              Plaintiff,                       **ORDER GRANTING IN PART**
                                                 **DEFENDANTS' MOTION FOR**
12      v.                                       **SUMMARY JUDGMENT**
13   CITY & COUNTY OF
     SAN FRANCISCO, et al.,
14
                Defendants.
15
16   _____/
17
18          On January 27, 2006, Plaintiff Kelly Medora filed this action against Defendants City and
19   County of San Francisco, Police Chief Heather Fong and Police Officers Rodney Fitzpatrick,
20   Christopher Damonte, William Eileff, Randall Soohoo and Timothy Oberzeir based on an incident
21   that occurred on January 23, 2005 on Broadway Street in San Francisco, California.  As a result of
22   Plaintiff's interaction with police officers on that night, Plaintiff sustained a broken arm.
23          Defendants have moved for partial summary judgment on all claims against all Defendants
24   except for Plaintiff's excessive force claim against Officer Damonte.[1]  The motion was fully briefed
25   and the Court held a hearing on August 14, 2007.  The Court granted the parties leave to file
26
27
28   _____
         [1]        Officer Rodney Fitzpatrick was dismissed from this case on July 2, 2007.

**United States District Court**
For the Northern District of California

supplemental briefs on issues raised at the hearing, which Defendants did on August 14, 2007.  At the hearing, Plaintiff informed the Court that she had abandoned her claims against all Defendants brought under the due process and equal protection clauses, under the California Constitution Article I, sections 2, 3, 7 and 13, and against Defendants other than Officers Soohoo and Damonte under California Civil Code § 52.1.  She also has abandoned her claims against Chief Fong except as to the Monell issue.  Therefore, summary judgment is granted as to those claims and parties.

**Facts**

Viewing the facts in the light most favorable to Plaintiff, the following occurred.  On January 23, 2005 at approximately 12:30 a.m., Plaintiff and her friend Christine Hollander were leaving Dolce, a bar in the North Beach area of San Francisco.  Burke Decl. Ex. 1 at 93:6-15; 98:7-10; Ex. 16 (incident report).  Ms. Hollander left the sidewalk and stood by a parked car to hail a taxi that had just let its passengers out.  Burke Decl. Ex. 1 at 124:4-13.  Plaintiff stood behind her.  Id. at 154:8. Less than a minute later, a police officer approached them and shouted at them to get out of the street.  Id. at 125:15-21.  Plaintiff turned to Ms. Hollander and told her that the police officer wanted them to return to the sidewalk, which they did.  Id. at 126:1-4.

The police officer then approached the women, grabbed Ms. Hollander's arm and asked her what she was doing in the street.  Burke Decl. Ex. 1 at 126:5-6; 155:9-11.  Plaintiff asked the officer why he was holding Ms. Hollander's arm and told him to let go of her arm.  Id. at 155:15-17. Plaintiff testified that the officer's demeanor was angry, inappropriate and irate.  Id. at 155:24-25.

Plaintiff then asked the officer whether his name was R. Fitzpatrick, which was the name on his jacket.  Burke Decl. Ex. 1 at 157:9-10.  In fact, the officer's name was Christopher Damonte. The officer answered, "yes," and told Plaintiff that she would be cited as well.  Id. at 157:15-20. Plaintiff testified that up to that point, the officer had not told either Plaintiff or Ms. Hollander that

**United States District Court**
For the Northern District of California

they would be cited. Id. at 157:21-24.

Plaintiff felt threatened by Officer Damonte and decided to walk away. Burke Decl. Ex. 1 at 158:21-159:1. She said: "Look, I didn't do anything and I don't think you're treating us appropriately and I am going to walk away from you right now because we didn't do anything." Id. at 158:21-23. Plaintiff walked west on the sidewalk with Officer Damonte following behind her. Id. at 159:6-13. Officer Damonte did not tell Plaintiff to stop, nor did he catch up to Plaintiff. Id. at 159:13-16. Plaintiff kept walking until she reached Officer Soohoo, who was standing on the corner. Id. at 159:24-160:3. Plaintiff said: "Look, this officer came up, grabbed my friend's arm. We were just trying to hail a cab. He's treating us inappropriately." Id. at 160:7-9.

Officer Damonte caught up to Plaintiff and Officer Soohoo in the crosswalk, and Officer Soohoo asked Officer Damonte what was going on. Burke Decl. Ex. 1 at 160:10-14. Officer Damonte told Officer Soohoo that he was trying to obtain Plaintiff's license to cite her. Id. at 160:13-17. Plaintiff demanded to know what she had done before producing her license. Id. at 160:19-22. The officers did not tell Plaintiff what she had done, but instead Officers Soohoo and Damonte and Doherty "moved in on" Plaintiff. Id. at 162:6-22. Officer Damonte grabbed Plaintiff's right arm and twisted it up behind her neck until it snapped. Id. at 162:22-24.

After her arm was broken, Officer Damonte dropped Plaintiff's arm and said to the other officers that he had just broken Plaintiff's arm. Burke Decl. Ex. 1 at 163:5-8. At that point, Plaintiff started screaming from the pain. Id. at 163:9-10. Officers Soohoo and Doherty guided Plaintiff to the curb to sit down. Id. at 163:17-22. An ambulance arrived and Plaintiff was taken to Kaiser Hospital. Id. at 164:23-165:4; 168:13-17.

Before Plaintiff was taken away by ambulance, police issued her a citation for violation of California Vehicle Code § 21955 (pedestrian in the roadway). Burke Decl. Ex. 1 at 167:16-25; Ex.

3

7.  Later at the hospital, Plaintiff was issued a citation for delaying, resisting and assaulting a police officer.  Burke Decl. Ex. 13.  At the hospital, Plaintiff and Ms. Hollander made calls to the non-emergency dispatch in an effort to make a complaint for assault but no one responded to their call.  Burke Decl. Ex. 1 at 174:4-21.  Plaintiff and Ms. Hollander called non-emergency dispatch again the next morning, but no one responded to their call.  Id. at 175:23-25.

As a result of her injury, Plaintiff suffered excruciating pain and wore a gravity cast for six months.  Burke Decl. Ex. 1 at 169:1-3; 172:17-19; 243:21-24.  Plaintiff began physical therapy and has experienced loss of hand function due to numbness.  Id. at 243:16-244:14.

**Discussion**

**1.    Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the nonmovant's] favor."  United Steelworkers of America v. Phelps Dodge Corp. , 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing Liberty Lobby, 477 U.S. at 255).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 ( 1986).  Where the nonmoving party

4

**United States District Court**
For the Northern District of California

will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Liberty Lobby, 477 U.S. at 250.

**2.    There is no triable issue of fact on Plaintiff's 42 U.S.C. § 1983 claims against Officers Eileff, Oberzeir and Soohoo for excessive force and battery.**

It is undisputed that the only officer who physically touched Plaintiff was Officer Damonte (see Bonta Decl. Ex. A at 214:1-8) and Defendants do not seek summary judgment as to him. Plaintiff contends that the other officers are liable for excessive force under a failure to intervene theory. Police officers have a duty to intervene when fellow officers violate constitutional rights of a citizen, but can be held liable under § 1983 only if they had a realistic opportunity to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (concluding that officers who were not present at the time of the shootings could not be liable under § 1983 for failure to intercede, and that the non-shooting officers who were present had no realistic opportunity to intercede so they, too, could not be liable).

Here, pursuant to Cunningham, and examining the evidence in the light most favorable to Plaintiff, Plaintiff's excessive force and battery claims against officers who were not present at the scene of the injury must fail. See Jones v. Williams, 297 F.3d 930, 939 (9th Cir. 2002) ("We reject the idea that mere presence at a search or membership in a group, without personal involvement in and a causal connection to the unlawful act, can create liability under section 1983."). Plaintiff has failed to provide any evidence that Officers Oberzeir or Eileff were present at the scene where she was injured and has not shown that they had any realistic opportunity to intercede to prevent the

injury.  Officer Elieff was on another part of the street with Ms. Hollander, twenty feet from where Plaintiff's arm was broken.  See Bonta Reply Decl. Ex. A at 46:20-21; Burke Decl. Ex. 1 at 37:12-15; 46:19-21.  Officer Oberzeir was only called to the scene after the injury had occurred.  See Bonta Reply Decl. Ex. B at 31:10-12.  Plaintiff agreed at the hearing that these claims should be dismissed.

Officer Soohoo was present at the time of Plaintiff's injury, but cannot be liable for excessive force unless he had a realistic opportunity to intercede.  See Jones, 297 F.3d at 939.  Plaintiff argued at the hearing that Officer Soohoo had a realistic opportunity to intercede because Plaintiff informed him, before Officer Damonte arrived to join them, that she believed that Officer Damonte was treating her inappropriately.  See Bonta Reply Decl. Ex. A at 160:7-9 ("Look, this officer came up, grabbed my friend's arm.  We were just  trying to hail a cab.  He's treating us inappropriately.").  According to Plaintiff, Officer Soohoo's duty to intercede began at that point and his failure to intervene creates a triable issue of fact as to his liability.  Plaintiff, however, has provided no authority to support her argument.

An officer's duty to intervene does not arise until a person's constitutional rights are being violated in the officer's presence, O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."), and there must be sufficient time to do so.  A case from the First Circuit is instructive on this issue.  Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203 (1st Cir. 1990).  There, the court determined that there was no realistic opportunity for police officers to intercede where the attack on the plaintiff occurred very quickly, even though the officers were right beside the handcuffed Plaintiff, and just prior to the assault overheard another officer goad the plaintiff's friend to fight next door, and then, in

response to the plaintiff's challenge to take the plaintiff on instead, witnessed that officer enter the room and beat the plaintiff.

Here, Officer Soohoo's knowledge about the prior interaction between Plaintiff and police officers is more attenuated than in Gaudreault, and does not support an inference that there was a realistic opportunity to intercede. Plaintiff approached Officer Soohoo alone after walking away from the scene of her initial interaction with police and told Officer Soohoo that she was being treated "inappropriately." Under those circumstances, and even after Officer Damonte arrived and took hold of Plaintiff's arm and (on Plaintiff's version of events) broke it a minute or less later, Officer Soohoo would have no reason to believe that her constitutional rights were being violated in his presence. Officer Soohoo knew that Officer Damonte was trying to cite Plaintiff, and was not obligated to accept Plaintiff's version of events. See Crowe v. County of San Diego, 359 F. Supp. 2d 994, 1013-14 (C.D. Cal. 2005) (police need not believe everything a suspect says, nor should an officer forego arresting a suspect when the suspect provides information that conflicts with facts initially providing probable cause). According to Plaintiff herself, the excessive force took only seconds and ceased as soon as her arm broke shortly after Officer Damonte grabbed her arm. See Bonta Reply Decl. Ex. A at 48:17-19 ("Then my arm was broken by Officer Damonte probably, like, a minute later."); 105:19-25 ("And there really wasn't anything to see because it happened so quickly and, you know, basically the three officers moved in on me and Damonte just took my right arm, twisted it behind my neck. I said, 'ow, ow, ow' and that's when he snapped it back."); 106:3-5 (". . . it happened so quickly and there wasn't a while lot of action. . . ."); 106:18 ("It happened so quickly."); 215:14-15 ("I mean, it was a matter of seconds basically."); see U.S. v. Koon, 34 F.3d 1416, 1448 (9th Cir. 1994) (stating in a criminal appeal that: "Thus if the blows had been struck so rapidly that Koon had no realistic opportunity to intervene, he would not be liable."); O'Neill v.

7

United States District Court
For the Northern District of California

Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988) (in reversing jury verdict against officer on one theory of failure to intervene, stating: "The three blows were struck in such rapid succession that Conners had no realistic opportunity to attempt to prevent them.  This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."); Gaudreault, 923 F.2d at 207 (affirming holding on summary judgment that officer not liable for failure to intervene, stating: "But [the plaintiff's] complaint (which contains the only account of the attack in the record) also says that the attack came quickly and was over in a matter of seconds.  A police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack. [citation omitted].  That clearly was the case here.").  Because the duty to intercede in this case did not arise when Plaintiff approached Officer Soohoo on the street to complain about her treatment by another officer, and because the undisputed testimony from Plaintiff is that the incident occurred extremely quickly, no reasonable trier of fact could find that Officer Soohoo had a realistic opportunity to intercede.

Accordingly, Defendants' motion for summary judgment of the excessive force claims against Officers Eileff, Oberzeir and Soohoo is granted.  Because the Court concludes that summary judgment should be granted, it need not reach the qualified immunity issue on this claim.

Moreover, because there is no evidence that any of these officers touched Plaintiff and because they are not liable for excessive force, Plaintiff's battery claim against the officers fails as well.  See Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1413 (2002) ("To make a prima facie case for either battery by a police officer or violation of section 1983, the plaintiff must demonstrate the unreasonableness of the force used."); Edson v. City of Anaheim, 63 Cal.App.4th 1269, 1273 (1998) ("By definition then, a prima facie battery is not established unless and until plaintiff proves unreasonable force was used.").

United States District Court
For the Northern District of California

**3.     Summary judgment is proper as to Plaintiff's assault claim against officers other than Officer Damonte.**

At the hearing, Plaintiff argued for the first time that her assault claim against Officer Soohoo arises not from his failure to intervene but from Plaintiff's allegation that "Soohoo, like, put his arm out like he was going to grab my purse." See Burke Decl. Ex. 1 at 162:6-7. "Assault" is generally defined as "a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." Lowry v. Standard Oil Co. of Cal., 63 Cal.App.2d 1, 6-7 (1944). California incorporates the definition of assault that appears in the California Penal Code. Cal. Penal Code § 240 ("assault " is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."). Plaintiff's brief, imprecise testimony that Officer Soohoo performed an ambiguous gesture that may have been directed toward grabbing her purse, without doing so or otherwise behaving in a manner showing that he intended to inflict injury on Plaintiff, is insufficient to defeat summary judgment on the assault claim against him, particularly in light of Plaintiff's failure to brief the issue. Further, Plaintiff has pointed to no evidence nor does she make any argument to support an assault claim against Officers Eileff and Oberzeir.

Moreover, there are no facts to support Plaintiff's assault claim against these three officers in her government tort claim filed pursuant to the Tort Claim Act, which states in full:

> San Francisco Police Officers approached Claimant (a pre-school teacher) and her friend Christine Hollander (a kindergarten teacher) in the area of the sidewalk adjacent to Broadway Street (at Kearny) on January 23, 2005 at approximately 12:14 a.m. as Ms. Hollander was attempting to hail a cab. When Claimant objected to the treatment of Ms. Hollander, San Francisco Police Officers grabbed Claimant's right arm from behind, twisted it and wrenched it upward with extreme and excessive force, causing a spiral fracture to her right humerus. Claimant was taken, by ambulance to Kaiser Emergency in San Francisco. Claimant and Ms. Hollander telephoned the police department from Kaiser Emergency to complain about the conduct of the officers. Claimant and Ms. Hollander were repeatedly told that an officer was on the way to Kaiser Hospital emergency to take their statements, however, no one ever arrived to assist them in

United States District Court
For the Northern District of California

1   filing a complaint.  Subsequently, an involved officer arrived at Kaiser
2   Emergency and cited Claimant for false charges.  The San Francisco Police
3   Officers involved include the following officers known to Claimant at this time:
    R. Soohoo, R. Fitzpatrick, W. Eileff, and C. Damonte.

4

5   See Bonta Decl. Ex. B.

6          Government Code section 945.4 provides that ". . . no suit for money or damages may be

7   brought against a public entity on a cause of action for which a claim is required to be presented . . .

8   until a written claim therefor has been presented to the public entity and has been acted upon. . . ."

9   The purpose of the tort claim requirement is to give the governmental entity notice of imminent legal

10  action so that it may investigate and evaluate the claim, and possibly settle it before litigation.  See

11  Turner v. California, 232 Cal.App.3d 883, 888 (1991).  The claim must fairly describe what the

12  entity is alleged to have done.  Id.  "If a plaintiff relies on more than one theory of recovery against

13  the State, each cause of action must have been reflected in a timely claim.  In addition, the factual

14  circumstances set forth in the written claim must correspond with the facts alleged in the complaint;

15  even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis

16  for recovery which is not fairly reflected in the written claim."  Nelson v. California, 139

17  Cal.App.4th 72, 79 (1982); see also Williams v. Braslow, 179 Cal.App.3d 762, 770 (1986) ("Courts

18  have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the

19  claim filed with the public entity. [citation omitted].  In other words, the factual content of the

20  plaintiff's claim was viewed by the trial court as operating to proscribe the limits of any later action

21  for which filing the claim is a precondition.").  "A claim, however, need not specify each particular

22  act or omission later proven to have caused the injury."  Stockett v. Association of California Water

23  Agencies Joint Powers Ins. Authority, 34 Cal.4th 441, 447 (2004) (quoting Stevenson v. San

24  Francisco Housing Authority, 24 Cal.App.4th 269, 278 (1994)).  Plaintiff's claim does not make any

25

26

27

28

10

reference to any issue regarding her purse, much less any relation of the purse to the injury claimed of a broken arm and false charges.

Therefore, summary judgment is appropriate on Plaintiff's assault claim as to officers other than Officer Damonte.

**4.      There is a triable issue of fact as to Plaintiff's false arrest claim.**

Plaintiff's complaint does not contain an express claim for false arrest, but it does refer to false reports, statements and citations made by the officers in an attempt to cover up for Officer Damonte's excessive force, and to Plaintiff's general right to be free from unreasonable seizures. See Compl. at ¶¶ 46-47; 54.  Although Plaintiff has not pled a separate claim for false arrest, leave to amend is freely granted, even as late as during trial to conform to proof.  See Galindo v. Stoody Co., 793 F.2d 1502, 1512-13 (9th Cir. 1986).  Plaintiff argues that she was subject to false arrest when the officers surrounded her on the street and when they issued false citations to her.

Plaintiff's tort claim can fairly be read to encompass a claim for false arrest.  The allegations in the complaint that support a false arrest claim are premised on the same factual foundation as in the government claim.  See, e.g., Stevenson, 24 Cal.App.4th at 278 (holding that plaintiff's claim that the defendant negligently maintained the premises where her father fell in his apartment and was not discovered until seven days later, and the allegations in the complaint of negligent failure to disclose latent defects in the premises, breach of the defendant's duty to inspect the premises for safety, and negligent failure to inspect the building "were not based on a different set of facts from those set out in the claim and [were] fairly included within the facts first noticed in the claim."); Blair v. Superior Court, 218 Cal.App.3d 221 (1988) (holding that plaintiff was not required to state the legal cause of the car accident in the claim and that the allegations of the complaint were premised on the same foundation set forth in the claim, and distinguishing cases that found a fatal

11

**United States District Court**
For the Northern District of California

variance between the claim and the complaint as involving a "complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim."); cf., e.g., Fall River, 206 Cal.App.3d 341 (stating that negligently maintaining an unsafe door was not the "factual equivalent" of failing to stop student horseplay, and directing the trial court to grant a motion for judgment on the pleadings as to the failure to supervise cause of action).

Defendants also argue that there is no triable issue of fact as to the false arrest claim.  Under California law, false arrest is defined as the "non-consensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however, short."  Rhoden v. United States, 55 F.3d 428, 430 (9th Cir. 1995 ); see also Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir.1998) ( "To prevail on his section 1983 claim for false arrest and imprisonment, [plaintiff] would have to demonstrate that there was no probable cause to arrest him.").  Probable cause to arrest is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs.  See Johnson v. Lewis, 120 Cal.App.4th 443, 454 (2004).  An arrest is not a false arrest if the facts available to the officer suggest that the plaintiff was committing a crime, whether or not that crime was the one that the plaintiff was cited for or was the one that was in the officer's mind.  See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (holding that a warrantless arrest is reasonable if given the facts objectively known to the officer, there is probable cause to believe that a crime has been or is being committed, whether or not that crime was the offense that the officers gave as the reason for the arrest).

Defendants also contend that the undisputed facts to which Plaintiff testified in her deposition show probable cause to arrest Plaintiff under Penal Code § 148 because she fled from

**United States District Court**
For the Northern District of California

Officer Damonte and lied about whether she had identification.  See Cal. Penal Code § 148(a)

("(a)(1) Every person who willfully resists, delays, or obstructs any public officer, peace officer, or

an emergency medical technician, . . . in the discharge or attempt to discharge any duty of his or her

office or employment, when no other punishment is prescribed, shall be punished by a fine not

exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year,

or by both that fine and imprisonment."); People v. Christopher, 137 Cal.App.4th 418 (2006)

(elements of a violation of § 148 are: (1) defendant willfully resisted, delayed or obstructed peace

officer; (2) when officer was engaged in performance of his duties; and (3) defendant knew or

reasonably should have known that other person was a peace officer engaged in performance of his

duties).  Plaintiff testified that Officer Damonte told her that she would be cited.  See Burke Decl.

Ex. 1 at 157:19-20.  Plaintiff told Damonte that she was going to walk away  because she did not do

anything, and then she proceeded to walk west on Broadway.  Id. at 158:21-159:8.  Officer Damonte

followed her.  Id. at 159:12-19.  Plaintiff testified that after she reached Officer Soohoo, Officer

Damonte caught up to her and told Officer Soohoo that he (Damonte) was trying to get Plaintiff's

license to cite her.  Id. at 160:10-16.  Plaintiff said that she did not have her license or that she did

not know if she had it.  Id. 160:19-161:2.  Later she said that her license was in her purse.  Id. at

162:4-6.

    While it is a close question, the Court concludes that there is a question of fact as to whether

there was probable cause to arrest Plaintiff for violation of Penal Code § 148.  First, there is no

evidence that she ran away from the police to avoid further interaction with them.  Cf., e.g., People

v. Allen, 109 Cal.App.3d 981 (1980) (holding that there was probable cause to arrest where a

suspect, who was described as "in a hurry" and "continuous[ly] looking over his shoulder," ran away

and hid).  In fact, Plaintiff walked up the street *towards* another police officer.  Second, although

**United States District Court**
For the Northern District of California

Plaintiff did not initially produce her identification, she eventually complied and did not falsely

identify herself, which does not constitute a violation of Penal Code § 148.  See People v. Quiroga,

16 Cal.App.4th 961, 966 (1993) (". . . it surely cannot be supposed that Penal Code section 148

criminalizes a person's failure to respond with alacrity to police orders."); cf. Christopher, 137 Cal.

App.4th at 1325 (falsely identifying oneself to the police following lawful arrest could be

characterized as willful act of obstructing a police officer).

Defendants also argue that the officers had probable cause to arrest Plaintiff for jaywalking

and for assault and battery.  But examining the evidence in the light most favorable to Plaintiff

reveals a triable issue of fact as to whether Plaintiff jaywalked or assaulted or battered the police

officers.  Compare Burke Decl. Ex. 1 at 226:17-21 ("We weren't in the crosswalk, crossing on a red

light when we were approached.  Christine was trying to hail a cab as we stated earlier.  So there

was never - there was never a red light in the crosswalk with us trying to cross the street."); 217:5-10

(Plaintiff testified that she did not flail her arms, try to squirm free or strike Officer Damonte in the

chest; 235:11 ("I did not resist [Officer Damonte] in any way."); 276:6-8 (Plaintiff testified that she

did not assault any of the officers), with Bonta Reply Decl. Ex. E (witness Cassolato's incident

report stating that Plaintiff crossed the street on a red light and struck Officer Damonte); Ex. F at

46:9-21; 47:25-48:7; 51:11-16 (witness Cassolato's deposition  testimony that Plaintiff struck

Officer Damonte);  Ex. E (witness Bain's incident report that Plaintiff was jaywalking).

Defendants further argue that the officers had probable cause to arrest Plaintiff for being

drunk in public.  But again, examining the evidence in the light most favorable to Plaintiff, there is

at most a triable issue of fact as to whether Plaintiff was drunk.  Compare Burke Decl. Ex. 1 at

115:14-20 (Plaintiff testified that when she left Dolce, she was not feeling the effects of the drink

she had before she went to Dolce and the two drinks that she had at Dolce); 118:13-119:1 (Plaintiff

14

**United States District Court**
For the Northern District of California

testified that she was not slurring her speech, did not have red or glassy eyes, did not smell of alcohol and did not have trouble with balance), with Burke Decl. Ex. 1 at 92:5-15 (Plaintiff weighs 115 to 120 pounds and is five feet and four inches tall); 115:23-117:9 (Plaintiff drank vodka drinks on the night of the incident); Bonta Reply Decl. Ex. D at 137:25-138:2 (Officer Damonte testified that: "I was concentrating on Medora. And at that point I thought 'she's got to be drunk.'").

Defendants argue that even if there was no probable cause to arrest Plaintiff, the officers enjoy qualified immunity and immunity under Penal Code § 847. "A qualified immunity analysis must begin with this threshold question: based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right? If no constitutional right was violated, the court need not inquire further. If, however, a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." Jackson v. Bremerton, 268 F.3d 646, 651 (9th Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)). The standard for qualified immunity is the "'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). If Defendants had a reasonable but mistaken belief that their conduct was lawful, qualified immunity applies. Saucier, 533 U.S. at 205-6.

Assuming, arguendo, that there was a violation of Plaintiff's clearly established constitutional rights, the inquiry focuses on the second prong of the Saucier test. Because the law is

15

United States District Court
For the Northern District of California

clearly established that officers required probable cause before arresting Plaintiff, the question is

whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff.

See Franklin v. Fox, 312 F.3d 423, 437 (9th Cir. 2002) ("Our inquiry is an objective one, based on

what a reasonable officer would believe if faced with the 'facts and circumstances' actually known

to the officer in question.  [citation omitted].  The parties do not dispute that existing law at the time

of [plaintiff's] arrest clearly established that he could not be arrested in the absence of probable

cause.  We must therefore only determine whether, viewing all evidence in the light most favorable

to [plaintiff], [the officers] reasonably could have believed they had probable cause for an arrest.").

As discussed above, there are triable issues of fact as to whether the officers had probable cause to

arrest Plaintiff, so the Court cannot find that the officers are entitled to qualified immunity at this

stage.

//

**5.     There is a triable issue of fact as to Plaintiff's claim based on California Civil Code § 52.1.**

California Civil Code section 52.1(b) allows Plaintiff to sue any person who interfered or

attempted to interfere, by threats, intimidation or coercion, with the exercise or enjoyment of her

federal or state constitutional or statutory rights.  See Venagas v. County of Los Angeles, 32 Cal. 4th

820, 841 (2004); Jones v. Kmart Corp., 17 Cal.4th 329, 334 (1998) ("But section 52.1 does require

an attempted or completed act of interference with a legal right, accompanied by a form of

coercion.").  Defendants argue that Plaintiff's government claim is not broad enough to encompass

Plaintiff's § 52.1 claim.  However, the government claim fairly includes a claim for interference

with Plaintiff's constitutional rights.

**United States District Court**
For the Northern District of California

1    Defendants further argue that Plaintiff's § 52.1 claim must fail because liability under this

2   section cannot be based on interference with Plaintiff's exercise of her right to be free from

3   excessive force, and that Plaintiff has failed to show that Defendants intended to interfere by threat

4   or coercion with a separate affirmative legal right enjoyed by Plaintiff.  Defendants cite no authority

5   for their argument that a violation of § 52.1 cannot be based on the right to be free from excessive

6   force, albeit to do so may be improperly circular.  In any case, a claim under § 52.1 can be based on

7   the right to be free from unreasonable search and seizure, a right which Plaintiff claims was violated

8   in this case.  See Venegas, 32 Cal.4th at 843 (affirming court of appeals holding that plaintiffs who

9   alleged unconstitutional search and seizure violations had adequately stated a cause of action under

10   § 52.1).

11   Defendants are not entitled to immunity pursuant to California Government Code § 821.6,

12   which states: "A public employee is not liable for injury caused by his instituting or prosecuting any

13   judicial or administrative proceeding within the scope of his employment, even if he acts

14   maliciously and without probable cause."  Pursuant to this section, Defendants are immune from

15   liability under state law if (1) they were employees of the County; (2) Plaintiff's injury was caused

16   by Defendants' acts in instituting or prosecuting a judicial or administrative proceeding; and (3)

17   Defendants' conduct while instituting or prosecuting the proceeding was within the scope of their

18   employment.  See Amylou R. v. County of Riverside, 34 Cal. Rptr. 2d 319, 321 (1994).  While this

19   immunity applies to police officers involved in instituting criminal investigations (see Asgari v. City

20   of Los Angeles, 15 Cal.4th 744, 756-57 (1997)), there is no evidence that the officers at the scene of

21   the excessive force incident were engaged in the investigation of a crime for purposes of immunity

22   under this section.

23   Because there is a triable issue of fact  and there is no evidence to support a finding of

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

immunity pursuant to § 821.6, summary judgment cannot be granted on Plaintiff's claim based on § 52.1.

**6.    There is a triable issue of fact as to Plaintiff's intentional infliction of emotional distress claim with respect to Officer Damonte only.**

Plaintiff argues that not only are Officers Damonte and Soohoo liable for intentional infliction of emotional distress for their roles in the incident, but that Officers Eileff and Oberzeir are liable for their roles in allegedly issuing false reports and citations.  To establish a prima facie case for intentional infliction of emotional distress under California law, a plaintiff must prove: (1) extreme and outrageous conduct by the defendant, without privilege, with the intention of causing or reckless disregard of the probability of causing emotional distress; (2) that she suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  See Cervantez v. J.C. Penney, Inc., 24 Cal.3d 579, 593 (1979).  To be outrageous, conduct must be so extreme as to "exceed all bounds that are usually tolerated in a civilized society."  Davidson v. City of Westminster, 32 Cal.3d 197, 208 (1982).

Defendants first argue that Plaintiff's government claim is not broad enough to encompass this claim.  However, as described above, the claim fairly read encompasses the intentional infliction of emotional distress claim, which arises out of the same factual basis as the government claim.  See Stockett, 34 Cal.4th at 449 ("In comparing claim and complaint, 'we are mindful that "[s]o long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits."' [citations omitted].  If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted.").

Defendants also argue that because Plaintiff did not seek treatment for alleged emotional

distress (see Burke Decl. Ex. 1 at 132:4-8), her intentional infliction of emotional distress claim must be dismissed.  Defendants have cited no authority, and the Court can find none, basing recovery for intentional infliction of emotional distress on whether a plaintiff sought treatment for emotional distress.  Plaintiff testified in her deposition that after her arm was broken, she was in excruciating pain and that this incident has caused her a lot of emotional stress.  See, e.g., Burke Decl. Ex. 1 at 49:22-24; 244:16-19; 256:20-21; 257:15-16.  This is sufficient evidence of emotional distress to survive summary judgment.

Viewing the evidence in the light most favorable to Plaintiff, there is a triable issue of fact as to whether Officer Damonte is liable for intentional infliction of emotional distress claim.  A reasonable jury could find that if Officer Damonte used excessive force against her, he intended to cause her extreme pain and distress by breaking her arm.  Therefore, summary judgment is denied with respect to Officer Damonte.  However, the Court has determined that there is no triable issue of fact as to excessive force by Officer Soohoo, and Plaintiff has failed to submit any evidence of other conduct by Officer Soohoo that would "exceed all bounds that are usually tolerated in a civilized society."  Therefore, summary judgment is granted as to Officer Soohoo.

Although not raised in her opposition brief, Plaintiff appeared to contend at the hearing that Officers Eileff and Oberzeir are liable for intentional infliction of emotional distress based on their roles in issuing false citations, causing Plaintiff the emotional distress of defending against false charges.  Even if the preparation of those citations constituted extreme and outrageous conduct sufficient to support a claim for intentional infliction of emotional distress, Officers Eileff and Oberzeir are entitled to immunity for their conduct.   Where, as here, police officers issue citations in the course of their investigation before instituting and prosecuting a judicial proceeding, the officers are immune under Government Code § 821.6 for intentional infliction of emotional distress

United States District Court
For the Northern District of California

19

**United States District Court**
For the Northern District of California

1   even if the citations were false.  See Gillan v. City of San Marino, 147 Cal.App.4th 1033, 1048-49

2   (2007) (holding that officers are immune from liability for defamation and intentional infliction of

3   emotional distress based on statements made in press releases about the investigation, and stating:

4   "An investigation before the institution of a judicial proceeding is part of the prosecution of a

5   judicial proceeding for purposes of [Government Code § 821.6], even if the authorities later decide

6   not to file charges. [citations omitted] . . . The immunity applies even if the officers abused their

7   authorities.").[2]

8   **7.      Summary judgment is proper as to Plaintiff's negligence claim.**

9   Even a broad reading of Plaintiff's government claim does not reveal a theory of negligence

10  nor facts to support it, but rather intentional misconduct.  See generally, Palazzi v. Air Cargo

11  Terminals, Inc., 244 Cal.App.2d 190, 195 (1966) ("Wanton misconduct is a tort separate and distinct

12  from negligence and involves different principles of liability and different defenses.").  Therefore,

13  summary judgment on Plaintiff's negligence claim is granted.

14  **8.      There is no triable issue of fact as to Plaintiff's Monell claim.**

15  Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official

16  policy or custom causes a constitutional tort.  Monell v. Department of Social Servs., 436 U.S. 658,

17  690 (1978).  However, a city or county may not be held vicariously liable for the unconstitutional

18  acts of its employees under the theory of respondeat superior.  Board of the County Comm'rs of

19  Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691.  Instead, "it

20  is when execution of a government's policy or custom, whether made by its lawmakers or by those

---

[2]      By contrast, this provision does not immunize officers from damages for false arrest or false imprisonment.  See Gillan, 147 Cal.App.4th at 1048 ("Section 821.6, however, provides no immunity from liability for false arrest or false imprisonment.").

20

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.  A policy giving rise to local government liability cannot be established merely by identifying conduct that is properly attributable to the municipality.  "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404.  That is, the municipal action must have been taken with the requisite degree of culpability and with a direct causal link to the deprivation of the federal right.  Id.

Proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom.  See McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000); Davis v. City of Ellenburg, 869 F.2d 1230, 1233 (9th Cir. 1989 ).  "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996).

Plaintiff argues that the City is liable under Monell because there is a policy and practice of police officers failing to comply with General Order ("GO") 2.04 in investigating incidents of excessive force, and that Officer Oberzeir did not comply with GO 2.04 in this case.  GO 2.04 requires, inter alia, that if an officer receives a citizen complaint of official misconduct, the senior ranking officer must be notified and must personally carry out the investigation of the complaint. See Burke Decl. Ex. 18 at IB.  GO 2.04 requires the senior officer to assess the seriousness of the complaint, prepare a Form SFPD/OCC 293, gather additional information and route the form to the OCC.  Id.  The senior officer must undertake an immediate investigation if the complaint involves an allegation of excessive force causing serious injury, notify OCC, complete an investigation and notify the senior ranking officer of each officer involved.  Id.  GO 2.04 also requires that the

21

investigating officer notify the senior officer at each police station of each of the officers involved. Id.

Plaintiff argues that because there is no evidence of any police officer ever complying with GO 2.04, there is a policy, which is known to police officers, that excessive force will not be investigated, which leads to unchecked excessive force. Here, a Form 293 was completed in this case by Plaintiff, not by Officer Oberzeir. See Bonta Reply Decl. Ex. G. But even if he did not comply with GO 2.04 in this case, Plaintiff has failed to meet her burden on summary judgment that there is a widespread policy of failing to comply with that General Order or, more importantly, that if that policy existed, police officers used that policy to engage in unrestrained excessive force, and that such a policy caused Plaintiff's injury. Without evidence of this policy or causation, Plaintiff's argument is tenuous and does not rise to the level of a Monell violation. Also, even if there was complete noncompliance with GO 2.04, complaints of excessive force would still be made and investigated by the City's Office of Citizen Complaints.

**Conclusion**

Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's claims of false arrest, violation of California Civil Code § 52.1 and intentional infliction of emotional distress (as to Officer Damonte). In all other respects, Defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: August 31, 2007

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge